UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| AARON JACKSON,<br><br>Plaintiff,<br><br>vs.<br><br>CUTCO CUTLERY CORPORATION and VECTOR MARKETING CORPORATION,<br><br>Defendants. | ) | Case No. 4:18CV1874 JCH |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants Cutco Cutlery Corporation and Vector Marketing Corporation's Joint Motion for Summary Judgment, filed October 7, 2021. (ECF No. 53). The motion is fully briefed and ready for disposition.

**BACKGROUND**

In October of 2013, Plaintiff Aaron Jackson was hired as an independent contractor with Defendant Vector Marketing Corporation ("Vector"). (Plaintiff's Statement of Additional Material Facts ("Plaintiff's Facts"), ¶ 1). Plaintiff's job was to sell Cutco Cutlery Corporation ("Cutco") knives to consumers via in-home sales demonstrations. (*Id.*, ¶ 2). To assist Plaintiff in his presentations, Defendants provided him with a "sales/sample kit" ("Sample Kit"), that included a plain smooth soft bag ("Sales Bag"), a cutting board, a cloth, scissors, a peeler, and several knives. (*Id.*, ¶¶ 3-5).[1] The knives in the Sample Kit were razor sharp, and came with cardboard sheaths that were open at both ends and designed to protect the knives during

1 The cutting board, cloth, scissors, peeler and knives were to be carried in the Sales Bag, which had a zipper but no handles, strap or pockets. (Plaintiff's Facts, ¶ 4-5).

shipping. (*Id.*, ¶¶ 7-8, 24-25).[2] During the course of his career with Defendants, Plaintiff used the Sample Kit approximately 50-60 times, to show the products to potential customers. (*Id.*, ¶ 6).

On November 3, 2013, Plaintiff returned home from work, exited his vehicle, and began walking toward his house with the Sample Kit in hand. (Statement of Uncontroverted Material Facts in Support of Defendants Cutco Cutlery Corporation and Vector Marketing Corporation's Joint Motion for Summary Judgment ("Defendants' Facts"), ¶ 8). A neighbor asked Plaintiff if he could move his car off the street, and Plaintiff turned back to his vehicle, tucking the Sample Kit under his right arm. (*Id.*, ¶¶ 8, 9). Plaintiff got into the driver's seat with the Sample Kit still tucked between his right arm and right flank, and upon sitting down immediately noticed a sharp pain in his right flank. (*Id.*, ¶¶ 10, 11). According to Plaintiff, one of the knives pierced the paper sheath and the soft Sales Bag, and stabbed him on the right side as he entered the vehicle and sat down. (Plaintiff's Facts, ¶¶ 9, 11). Plaintiff observed that the tip of the knife had pierced the Sample Kit's bag, and was protruding from a hole in the Sample Kit. (Defendants' Facts, ¶ 13). The point of the knife had penetrated Plaintiff's right flank by a few centimeters. (*Id.*, ¶ 14). Plaintiff exited his vehicle and began walking back toward his house, when he became lightheaded. (*Id.*, ¶ 15). He eventually fell on the sidewalk outside his home, and an ambulance transported him to the hospital, where his right kidney was removed. (*Id.*, ¶¶ 16, 17; Plaintiff's Facts, ¶ 12).

Plaintiff filed his original Complaint in this matter on November 2, 2018. (ECF No. 1). In his First Amended Complaint, filed August 26, 2019, Plaintiff asserts the following causes of action: Strict Liability—Product Defect (Count I); Strict Liability—Failure to Warn (Count II);

---

2 The cardboard sheaths were not meant to protect the salespeople or customers. (Plaintiff's Facts, ¶ 19).

and Negligence (Count III). (ECF No. 21).

In their Joint Motion for Summary Judgment, Defendants maintain there exist no genuine issues of material fact, and they are entitled to judgment as a matter of law on all counts of Plaintiff's' First Amended Complaint. (ECF No. 53).

**SUMMARY JUDGMENT STANDARD**

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*.

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Id*. at 249.

**DISCUSSION**

## I. Strict Liability—Product Defect

In Count I of his First Amended Complaint, Plaintiff alleges Defendants are strictly liable for his injury, as it was caused by an allegedly defective product designed, manufactured, distributed, and/or sold by Defendants. Specifically, Plaintiff maintains the Sales Bag was unreasonably dangerous when put to a reasonably anticipated use in that there was insufficient shielding of the razor sharp knives the Sales Bag was intended to hold, thus allowing the knives to pierce the Sales Bag and cut those handling the carrier. (First Amended Compl., ¶ 20).

Under Missouri law[3], in order to prevail in a products liability action under a theory of defective design, Plaintiff must establish that, "'1) defendant sold the product in the course of its business; 2) the product was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use; 3) the product was used in a manner reasonably anticipated; and 4) plaintiff was injured as a direct result of such defective condition as existed when the product was sold.'" *Farkas v. Addition Manufacturing Technologies, LLC*, Case No. 4:17CV761 RLW, 2018 WL 6434776, at *5 (E.D. Mo. Dec. 7, 2018) (quoting *Pillow v. General Motors Corp.*, 184 F.R.D. 304 (E.D. Mo. 1998)). "The focus is on the reasonably anticipated use of the product rather than the harm the product may cause," and "[r]easonably anticipated use includes misuse and abnormal use which is objectively foreseeable." *Pitman v. Ameristep Corp.*, 208 F.Supp.3d 1053, 1060 (E.D. Mo. 2016) (citations omitted). "As a matter of law, injury from use of a product in an unannounced and unexpected manner will not support a strict liability-product defect cause of action." *Moll v. General Automatic Transfer Co.*, 873 S.W.2d 900, 901 (Mo. App. 1994) (internal quotation marks and citation omitted).

In their Motion for Summary Judgment, Defendants maintain Plaintiff cannot establish

[3] This is a diversity case, where the law of Missouri governs the rights of the parties. *Stanger v. Smith & Nephew, Inc.*, 401 F.Supp.2d 974, 978 (E.D. Mo. 2005).

that he used the product, *i.e.*, the Sales Bag and Sample Kit, in a manner reasonably anticipated, or that Defendants objectively should have foreseen his use. In support of this assertion, they focus on the following testimony from Plaintiff's deposition:

> Q Did you feel that it would be okay and safe to either sit on your knife sample kit or lean against it?
> A: It wasn't the plan to sit on it or lean against it.
> Q: I didn't ask whether it was your plan. I asked whether you feel that it should have been okay to sit or lean on the knife sample kit?
> A: No.
> Q: Did you foresee that you'd ever be injured in the way you were?
> A: No.
> Q: Would you call it a freak accident?
> A: Yes.
> Q: If you could never have foreseen this, then wouldn't you expect Cutco or Vector—you couldn't have expected them to have foreseen it, correct?
> A: Correct.

(*See* Plaintiff's Dep., Defendants' Exh. 2 at 64:15-65:7).

Upon consideration, the Court finds Defendants' emphasis on whether Plaintiff believed it would be safe to sit on or lean against his Sample Kit, and/or whether it was foreseeable to Plaintiff or Defendants that he would be injured in the way that he was, to be misplaced. Instead, the relevant question is whether the product itself was being used in a manner reasonably anticipated at the time of the incident.[4] Plaintiff's job was to sell Cutco knives to consumers via in-home sales demonstrations, and to do so he transported the Sample Kit with him from home to home. At the time of the accident, Plaintiff was walking back toward his car after returning home from work, with the Sample Kit tucked under his right arm. He sustained his injury when he got into the driver's seat with the Sample Kit still tucked between his right arm and right flank. With respect to whether Plaintiff's use of the Sales Bag was reasonably anticipated, the parties agree that the Sales Bag had neither handles nor a strap, and Cutco's

4 As noted above, reasonably anticipated use includes misuse or abnormal use that is objectively foreseeable.

corporate representative testified that there were no instructions given to salespeople on how to carry the bag, and that he in fact did not know how individuals carried the bag. (*See* Paul Matheson Dep., Plaintiff's Exh. 3 at 52:2-15, 53:3-22). He further testified that it was possible a salesperson could trip while holding the Sales Bag, or drop the bag. (*Id.* at 57:2-9). Finally, Defendants' expert testified that it was foreseeable that someone could trip and fall into the knife bag, and potentially get stabbed by the tip of a knife. (*See* Dr. Preston Scarber, Jr. Dep., Plaintiff's Exh. 4 at 32:1-23). Under these circumstances, the Court finds a genuine issue of material fact remains with respect to whether Plaintiff's use of the Sales Bag, and/or objectively foreseeable misuse or abnormal use, was reasonably anticipated by Defendants. This portion of Defendants' Motion for Summary Judgment must therefore be denied.

**II. Strict Liability--Failure To Warn**

In Count II of his First Amended Complaint, Plaintiff alleges Defendants are strictly liable for his injury, as the Sales Bag designed, tested, manufactured, assembled, marketed, distributed, provided and/or sold by Defendants was unreasonably dangerous when put to its reasonably anticipated use without knowledge of its characteristics. (First Amended Compl., ¶ 23). Specifically, Plaintiff maintains Defendants failed to give adequate instructions or warnings regarding the safe use of the Sales Bag. (*Id.*, ¶ 24).

Under Missouri law, "[t]he elements of a cause of action for strict liability-failure to warn are as follows: (1) defendant sold the product in question in the course of his business; (2) the product was unreasonably dangerous at the time of sale when used as reasonably anticipated without knowledge of its characteristics; (3) defendant did not give adequate warning of the danger; (4) the product was used in a reasonably anticipated manner; and (5) plaintiff was damaged as a direct result of the product being sold without an adequate warning." *Cole v. Goodyear Tire & Rubber Co.*, 967 S.W.2d 176, 183 (Mo. App. 1998) (citation omitted).

Further, "[t]here are two separate requirements of causation in a failure to warn case: (1) the product for which there was no warning must have caused plaintiff's injuries; and (2) plaintiff must show a warning would have altered his behavior." *Id.* at 184 (citing *Arnold v. Ingersoll-Rand Co.*, 834 S.W.2d 192, 194 (Mo. banc 1992)). Summary judgment properly is entered if either causation element is lacking. *Mothershead v. Greenbriar Country Club, Inc.*, 994 S.W.2d 80, 89 (Mo. App. 1999) (citation omitted).

Upon consideration of the parties' submissions, the Court finds that fact questions remain with respect to Plaintiff's failure to warn claim, rendering summary judgment inappropriate. As noted above, the Court finds Plaintiff presents sufficient evidence that Defendants sold the product in question in the course of their business, that the product was unreasonably dangerous at the time of sale when used as reasonably anticipated, and that the product was used in a reasonably anticipated manner. With respect to the issue of adequate warning, Defendants note that manufacturers and distributors do not have a duty to provide warnings about dangers that are open and obvious, or which are commonly known. They maintain the dangers involved with handling sharp knives are open and obvious, thus obviating the need for a warning.

In his response, Plaintiff does not dispute that the dangers of handling sharp knives is open and obvious. He asserts he was not injured while handling the knives, however, but instead was injured when a knife punctured both the cardboard shipping sheath and the soft knife Sales Bag as he was getting into his car while holding the kit close to his body. Plaintiff testified that prior to the day he was injured, he had not identified that Cutco knives in his Sample Kit presented a potential hazard, because he "had confidence and faith that the knives were held in the bag." (*See* Plaintiff's Dep., Plaintiff's Exh. 1 at 35:21-36:5).[5]

---

5 Plaintiff further testified as follows:

Q If those knives could pierce—could cut through a penny, what made you think

Upon consideration of the foregoing, the Court finds a genuine issue of material fact exists as to whether a warning would have altered Plaintiff's behavior. In other words, had Plaintiff been aware of the Sales Bag's alleged deficiencies, he may have altered his behavior in terms of how he packed the knives into the bag, and/or how he transported the bag. Defendants' Motion for Summary Judgment on Plaintiff's strict liability-failure to warn claim must therefore be denied.

**III. <u>Negligence</u>**

In Count III of his First Amended Complaint, Plaintiff claims his injuries were a direct and proximate result of Defendants' negligence. Specifically, Plaintiff claims Defendants failed to exercise ordinary care in the design, testing, manufacture, assembly, installation, inspection, marketing, distribution, and/or sale of the Sales Bag, and were negligent in one or more of the following respects: 1) Defendants failed to provide proper design, testing, manufacture, assembly, installation, or inspection of the Sales Bag, to ensure adequate guarding from the knives to those using, operating or exposed to it; 2) Defendants failed to provide or ensure that adequate training was provided to those using or exposed to the Sales Bag regarding its proper use or operation; or 3) Defendants failed to provide an adequate owner's and/or operator's manual and/or user's guide, instructions, and/or warnings to those using or exposed to the Sales Bag. (First Amended Compl., ¶ 28).

Under Missouri law, "'[i]n an action for negligence, generally, a plaintiff must allege ultimate facts which if proven, show: (1) the existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) failure of the defendant to perform that duty; and (3) injury

---

that they wouldn't cut the pleather bag that you saw earlier?

A They were giving me deets—I never was given anything about anything going through the bag. I had faith in the bag, that it was going to do what they provided me.

(Plaintiff's Dep. at 36:14-20).

to the plaintiff resulting from such failure.'" *Pro Service Automotive, L.L.C. v. Lenan Corp*, Case No. 04-587-CV-GAF, 2005 WL 3371054 at *13 (W.D. Mo. Dec. 12, 2005) (quoting *Scheibel v. Hillis*, 531 S.W.2d 285, 288 (Mo. 1976) (en banc)). Thus, "[t]o recover on [his] claim for negligent manufacture, design or failure to warn, the Plaintiff[] must establish that the Defendant[s] failed to use ordinary care to either manufacture and/or design the [Sales Bag] to be reasonably safe or to adequately warn of the risk of harm from [the alleged defect in the Sales Bag]." *Id.* (internal quotation marks and citation omitted).

In their Motion for Summary Judgment, Defendants assert that Plaintiff fails to establish they had a duty to protect him against an unforeseeable injury or occurrence. Defendants again cite to the above quoted deposition testimony from Plaintiff, but as it held in section I, *supra*, the Court finds that genuine issues of material fact remain with respect to both whether Plaintiff's use of the Sales Bag, or objectively foreseeable misuse or abnormal use, was reasonably anticipated by Defendants, and whether the injury Plaintiff sustained was foreseeable. This portion of Defendants' Motion for Summary Judgment will therefore be denied.[6]

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Cutco Cutlery Corporation and Vector Marketing Corporation's Joint Motion for Summary Judgment (ECF No. 53) is **DENIED**.

Dated this 8th Day of December, 2021.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

6 Upon consideration of the parties' submissions, the Court further finds a genuine issue of material fact remains with respect to whether Defendants were on notice of the possibility of Plaintiff's injury due to prior instances of similar user harm.